Chillious v Edouard (2025 NY Slip Op 00209)

Chillious v Edouard

2025 NY Slip Op 00209

Decided on January 15, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 15, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
ROBERT J. MILLER
DEBORAH A. DOWLING
HELEN VOUTSINAS, JJ.

2020-05888
 (Index No. 522699/17)

[*1]Oveda Chillious, etc., appellant, 
v
Kathleen Edouard, etc., et al., respondents, et al., defendants.

Wolf & Fuhrman, LLP, Bronx, NY (Carole R. Moskowitz and Eliot Wolf of counsel), for appellant.
Martin Clearwater & Bell LLP, New York, NY (Barbara D. Goldberg, Conrad A. Chayes, Jr., and Gregory A. Cascino of counsel), for respondent Kathleen Edouard.
Helwig, Henderson, Gray & Spinola, LLP, Syosset, NY (Pamela M. Gleit and Deborah Gray of counsel), for respondent Kimesha Clark.

DECISION & ORDER
In an action to recover damages for medical malpractice and wrongful death, the plaintiff appeals from an order of the Supreme Court, Kings County (Ellen M. Spodek, J.), dated July 2, 2020. The order granted the separate motions of the defendants Kathleen Edouard and Kimesha Clark for summary judgment dismissing the complaint insofar as asserted against each of them.
ORDERED that the order is reversed, on the law, with one bill of costs, and the separate motions of the defendants Kathleen Edouard and Kimesha Clark for summary judgment dismissing the complaint insofar as asserted against each of them are denied.
On August 31, 2015, the plaintiff's decedent presented to her primary care physician, the defendant Kathleen Edouard, an employee of the defendant AdvantageCare Physicians, P.C. (hereinafter AdvantageCare), for an annual exam. The decedent complained of shortness of breath on exertion for five months and reported that she had been to the emergency room four times for this complaint and had been treated at the hospital for asthma with a nebulizer with some improvement. Edouard diagnosed the decedent with morbid obesity and shortness of breath on exertion, discussed bariatric surgery with the decedent, and referred the decedent for a pulmonary consult and pulmonary function test (hereinafter PFT).
On November 24, 2015, a PFT was performed, which showed that the decedent had a reduced lung capacity of 73% of normal and a reduced diffusing capacity of 56% of normal.
On December 2, 2015, the decedent presented to AdvantageCare with complaints of shortness of breath and chills, and was seen by the defendant Kimesha Clark, a nurse practitioner. The decedent reported that her shortness of breath started on November 25, 2015, but since November 30, 2015, it was accompanied by chest pain with coughing, and that she had an upcoming appointment with a pulmonologist on December 4, 2015. Clark documented in the decedent's chart that her shortness of breath was a recurrent problem, the latest episode started in the past week and [*2]had been gradually worsening, and she had chest pain but no leg pain or leg swelling and "no known risk factors for [deep vein thrombosis]/[pulmonary embolism]." Clark diagnosed the decedent with shortness of breath, asthma, and "BMI 45.0-49.9, adult." Clark prescribed guaifenesin (Robitussin) and albuterol, directed the decedent to follow up with the pulmonologist, and discussed weight loss with the decedent.
On December 4, 2015, the decedent had a consult with the defendant Eva Rubin, a pulmonologist. The decedent reported a six-month history of intermittent episodes of shortness of breath on exertion, with a cough for the last two to three days; snoring for three years; and excessive daytime sleepiness. Rubin diagnosed the decedent with acute bronchitis, morbid obesity, "PFT cw mild restriction," and apnea; prescribed her albuterol and amoxicillin; and referred her to a sleep medicine consultation.
On December 9, 2015, the decedent died as the result of deep vein thrombosis (hereinafter DVT) of the lower extremities and pulmonary embolism (hereinafter PE).
The plaintiff, as the administrator of the decedent's estate, commenced this action to recover damages for medical malpractice and wrongful death against Edouard, Clark, Rubin, and AdvantageCare. Edouard moved for summary judgment dismissing the complaint insofar as asserted against her, and Clark separately moved for summary judgment dismissing the complaint insofar as asserted against her. In opposition to the separate motions, the plaintiff submitted a redacted affirmation of a physician, an internist, who opined that both Edouard and Clark departed from good and accepted medical practice by failing to timely diagnose and treat the DVT and PE conditions in the decedent in the four months prior to her death, and that those departures were a proximate cause of the decedent's injuries and death. The Supreme Court granted the separate motions of Edouard and Clark, determining that the opinions of the plaintiff's expert physician were speculative and not supported by the record. The plaintiff appeals.
"'The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries'" (Blank v Adiyody, 220 AD3d 832, 833, quoting Barnaman v Bishop Hucles Episcopal Nursing Home, 213 AD3d 896, 898). "When moving for summary judgment, a defendant . . . has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby" (J.P. v Patel, 195 AD3d 852, 853 [internal quotation marks omitted]). "'Once the defendant has made such a showing, the plaintiff, in opposition, must submit evidentiary facts or materials to rebut the defendant's prima facie showing, but only as to those elements on which the defendant met the prima facie burden'" (Blank v Adiyody, 220 AD3d at 833-834, quoting Guctas v Pessolano, 132 AD3d 632, 633).
Here, Edouard and Clark each demonstrated, prima facie, through an expert affirmation, that they did not depart from good and accepted medical practice. Specifically, Edouard submitted an affirmation of Brian D. Feingold, a physician board certified in internal medicine, who opined that the decedent's presentation on August 31, 2015, was not indicative of a thromboembolic process and that the decedent's DVT/PE was not present until the acute event precipitating her cardiac arrest on December 9, 2015. Feingold opined that Edouard complied with the standard of care on August 31, 2015, by examining the decedent upon her complaint of shortness of breath on exertion for five months, referring the decedent for a pulmonary consult and PFT, and relying upon the decedent's presentation, including her lack of lower extremity symptomatology, reported history of negative chest X-rays, and relief of symptoms with asthma medication, in determining not to refer the decedent for a Doppler/ultrasound study to rule out DVT/PE. Clark also relied upon Feingold's affirmation as well as an affirmation of Preston L. Winters, a physician board certified in internal medicine, who opined that Clark complied with the standard of care by examining the decedent upon her complaint of shortness of breath for one week and appropriately treated the decedent on December 2, 2015, based upon her presentation, including the absence of complaints, signs, or symptoms suggestive of DVT/PE, such as leg pain or leg swelling, and no known risk factors for DVT/PE.
However, neither Edouard nor Clark made an independent prima facie showing that no claimed departure was a proximate cause of the decedent's injuries (see Lopresti v Alzoobaee, 217 AD3d 759, 760-761). Feingold provided only a conclusory opinion that Edouard's care and treatment was not a proximate cause of the decedent's injuries and death. Similarly, Winters provided only a conclusory opinion that "no act or omission by [Clark] caused, created or exacerbated the [decedent's] condition." These conclusory opinions were insufficient to eliminate triable issues of fact as to whether timely diagnosis and treatment of the decedent's DVT/PE would have prevented her death (see id. at 761). Thus, to defeat the separate motions for summary judgment, the plaintiff was only required to raise a triable issue of fact as to whether Edouard and Clark each departed from good and accepted medical practice (see Matos v Khan, 119 AD3d 909, 910; Stukas v Streiter, 83 AD3d 18, 30).
Contrary to the contentions of Edouard and Clark, the plaintiff raised, through the submission of the affirmation of her medical expert, a triable issue of fact as to whether Edouard and Clark departed from the standard of care by failing to properly rule out a thromboembolic cause of the decedent's symptoms of shortness of breath. In that affirmation, the physician, board certified in, among other things, internal medicine, pulmonary medicine, and sleep medicine, opined that the decedent had chronic DVT that went undiagnosed and untreated by both Edouard and Clark, and that Edouard and Clark each departed from good and accepted medical practice by failing to properly and timely investigate, diagnose, and treat the cause of the decedent's shortness of breath, which resulted in the progression of the DVT, an occlusive PE, and ultimately death.
Furthermore, although she was not required to do so, the plaintiff raised triable issues of fact as to whether the alleged departures in failing to timely and properly investigate, diagnose, and treat the decedent's conditions proximately caused the decedent's injuries and death. "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (Feinberg v Feit, 23 AD3d 517, 519).
Contrary to the Supreme Court's determination, the opinions of the plaintiff's expert physician were not speculative and conclusory, and did not fail to address the opinions of Edouard's and Clark's experts (see Ivey v Mbaidjol, 202 AD3d 1070, 1072; Maestri v Pasha, 198 AD3d 632, 635). The plaintiff's expert physician opined, inter alia, that Edouard and Clark departed from good and accepted medical practice by failing to perform a proper workup of the decedent, failing to refer the decedent for the proper studies to rule out DVT, and failing to institute the proper treatment, which resulted in the progression of the DVT and ultimately an occlusive PE causing her sudden death. Among other things, "[w]hether a diagnostic delay affected a patient's prognosis is typically an issue that should be presented to a jury" (Wiater v Lewis, 197 AD3d 782, 784).
Accordingly, the Supreme Court should have denied the separate motions of Edouard and Clark for summary judgment dismissing the complaint insofar as asserted against each of them.
DILLON, J.P., MILLER, DOWLING and VOUTSINAS, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court